**PLATT, et al v. BOARD OF PUBLIC INSTRUCTION, et al.**

Circuit Court, Lake County.

October 20 and October 31, 1955.

J. W. Hunter and Roy Hamlin, both of Tavares, and T. C. Cork, Clermont, for plaintiffs.

W. E. Lee, Clermont, P. B. Howell, Jr., Leesburg, and Herbert S. Phillips, Tampa, for defendants.

T. G. FUTCH, Circuit Judge.

*Findings of the court*: Plaintiffs filed their complaint on March 16, 1955—all dates hereinafter mentioned are in 1955, unless otherwise stated. On April 11 defendants filed a motion to dismiss, also motions to strike part of the complaint and for a more definite statement of facts. On April 20 the court heard and denied these motions.

On May 9 defendants filed their notice of appeal to the Supreme Court—in effect a petition for a writ of certiorari reviewing the aforesaid order and apparently so treated by that court. On June 21 the Supreme Court denied the writ.

Defendants in the meantime having failed to perfect supersedeas and likewise having failed to plead or answer as required by the order of April 20, decree pro confesso was duly and regularly entered against them. On May 24 defendants filed their motion to vacate the decree pro confesso, at the same time tendering their answer to the complaint together with a stipulation between counsel for the parties whereby plaintiffs' counsel agreed not to apply for a final decree before disposition of the petition for certiorari by the Supreme Court.

After the high court's mandate denying the writ had been received by this court, the motion to vacate the default judgment

was by agreement of counsel for all parties granted, and order entered accordingly on June 28. On the same day defendants filed their answer.

On plaintiffs' motion the court on July 7 entered an order striking from the answer the following allegation in paragraph 7 thereof—"On information duly brought and presented to said board that plaintiffs and their children were 'Croatans' and that 'Croatans' are legally defined as people of mixed Indian, White and Negro blood," but allowing defendants 10 days to amend.

On July 16 defendants filed their amendment substituting for the stricken allegation the following—"Said defendants being informed and so averring that plaintiffs and their children are 'Croatans' with Negro blood within the meaning and intent of the laws of the state of Florida."

Following the amendment of the answer as above set forth, plaintiffs took depositions of members of the board of public instruction of Lake County and the county superintendent of public instruction, which depositions will be referred to later in these findings.

Notwithstanding that this court had already denied a motion to dismiss, sustained by the Supreme Court, defendants again on August 10 filed another motion to dismiss, presenting the same question already passed upon by this court and the Supreme Court, ruling upon which the court saw fit to reserve until final hearing.

At the same time and on the very day set for the taking of the depositions above referred to, August 10, defendants filed their objections to the taking of depositions without having presented the same to the court and while the judge of the court was absent from the county. On the same day they supplied the press with copies of the objections. The objections were thereafter stricken from the record by this court of its own motion—because the objections and the handling thereof by defendants' counsel showed conclusively that they were not filed in good faith.

On plaintiffs' motion after due notice to defendants' counsel the court on October 4, with all counsel for all parties present, determined that a pre-trial conference should be held and directed the counsel for the parties to collaborate and prepare and present to this court a proper order to govern such conference, and fixing the date for the conference on October 18.

Counsel for the parties thereafter collaborated, formulated and presented to the court a complete formal order for the government

and conduct of the conference—without objection or reservation by counsel for plaintiffs or defendants—which the court signed and filed on October 6, and which is set forth in full below—

The above and foregoing cause having come on to be heard on plaintiffs' motion for a pre-trial conference contemplated by the provisions of rule 1.16, 1954 Florida rules of civil procedure, pursuant to notice served on defendants' counsel on September 30, 1955, and counsel for both of the parties having appeared and argued the motion,

It is ordered that said counsel are directed to appear before this court in chambers at 9:30 A.M., October 18, 1955, for conference to consider—

1.   The determination and simplification of the issues disclosed by the present pleadings.

2.   The necessity or desirability of amendments to the pleadings.

3.   The examination of all of the available depositions heretofore taken and the determination of the legal effect of the facts and circumstances disclosed therein.

4.   Fixing the time within which all further depositions shall be taken.

5.   The examination of all documentary evidence and exhibits and an order forbidding the introduction of any additional documentary evidence and exhibits.

6.   A written statement by each of the parties as to the names and addresses of each of the witnesses proposed to be used by them at the time of the taking of further testimony herein, either by deposition or otherwise, if any shall be required, together with a brief, direct and positive statement as to the testimony which shall be offered by said witnesses.

7.   The limitation of the number of expert witnesses to be called by either party.

8.   The disposition of the request of the defendants for the court to impanel a jury for the purpose of trying and determining the issues of fact involved in this case set forth in the answer of said defendants heretofore herein filed.

9.   Such other matters as may aid in the disposition of the action.

At the beginning of the pre-trial conference no objection was interposed by either party as to any part or portion of the above order entered for the government of the conference.

Under item 1 of the order defendants' counsel presented what they termed 14 issues of fact. The court held that defendants in their answer by way of affirmative defense had narrowed the issues to one main issue—*whether the children involved are negroes as defined by the Florida statutes,* which definition may be found in section 1.01(6), Florida Statutes 1953, to wit—"The words 'negro,' 'colored,' 'colored persons,' 'mulatto' or 'persons of color,' when applied to persons, include every person having one-eighth or more of African or negro blood."

Under paragraph 5 of the order defendants at first objected and refused to submit their documentary evidence and exhibits but after being asked directly by the court whether they refused to submit all their documentary evidence and exhibits for examination they submitted certain documents and exhibits which will be hereafter discussed.

When paragraph 6 of the order was reached and plaintiffs had fully complied with its requirements, defendants again refused to comply with the order in full by refusing to submit the names and addresses of each of the witnesses they proposed to use at the trial together with a statement of the testimony to be offered by the witnesses, but they did not make the refusal final and the court thereupon at approximately 11:30 A.M. adjourned the conference until 4 P.M. of the same day to give the defendants time to determine whether they would comply with paragraph 6.

Upon resuming the hearing at 4 P.M. defendants interposed written objections to being required to comply with paragraph 6 and finally refused to comply with the order, whereupon plaintiffs interposed their motion to strike the essential portions of the defendants' answer as being false in fact, not pleaded in good faith, and as sham in the light of the evidence revealed by plaintiffs to support the complaint and that revealed by defendants to support their answer.

The evidence revealed by the parties is fairly summarized as follows—

### Summary of Plaintiffs' Evidence

Affidavit of Allen Platt who stated that he was the son of John Pratt, that he had lived all his life in the Crane Pond school district of Orangeburg, South Carolina, that he and his family all attended the Crane Pond white school at Holly Hill, South Carolina; that he had never associated with negroes or had anything to do with them and neither had his family; that he and all the members of his family are of Indian-Irish descent; that he was in the selective

service draft as a white man; that he was registered in the Democratic white primaries; that he entered his children in the white public school in Mount Dora, Florida; that without notice to him the names of the children were stricken from the rolls and they were forbidden to return to the school and that they were never given a hearing; that on the 29th of October, 1954, and four days after the entry of an order by the defendant school board removing the names of the children from the roll, he and his family were forced by threats of violence to move temporarily into Orange County until such time as he could obtain safe and suitable living quarters in Lake County; that the place where he had moved was in the Mount Dora school district and that the superintendent of schools in Orange County wrote a letter to the superintendent of schools in Lake County giving him permission to take the Platt children into the Mount Dora schools, and further a letter was introduced from Judson B. Walker, the superintendent of schools in Orange County, to the effect that an arrangement had been in force for twenty years with the Lake County school board to transport all of the children along the border of the two counties to the Lake County schools; that on the 8th day of September, 1955, he and his family, having secured a home in Lake County, returned to Lake County and are now residents in said county and in the Mount Dora school district.

Affidavit of Laura Platt, the mother of the Platt children and wife of Allen Platt, who was formerly Laura Dangerfield. She stated that she was of Indian-Irish descent; that her foreparents and all of her relations were of such descent; that she and her brothers and sisters attended a white school in Berkeley County, South Carolina, called the Barrows school; that she had never associated with negroes in any way; that she and all her family attended white churches and never attended a negro church; that she was a granddaughter of William Dangerfield who was the greatgrandfather of her children; and in corroboration of her testimony the plaintiffs filed a certificate of R. C. Rhodes, comptroller general of the state of South Carolina, under the seal of said state, that William R. Dangerfield, her grandfather, and also John Pratt, the father of Allen Platt, were confederate soldiers, giving the name and number of their command, and that William R. Dangerfield was given a pension after the civil war by the state of South Carolina which he drew continuously up until the date of his death; that John Pratt and his wife, Adeline Pratt, the mother of Allen Platt and the grandmother of the Platt children, were given confederate pensions by the state of South Carolina as long as they lived; that H. S. Feagin, county superintendent of educa-

tion, Berkeley County, South Carolina, by deposition said that the Barrows school in South Carolina was a white school and taught by white teachers and that it was consolidated several years ago with the white consolidated schools of Moncks Corner, South Carolina.

Affidavit of Joel Platt, who stated that he had lived in the Crane Pond district all of his life; that he was 65 years old; that 60 years ago he attended the Crane Pond school and that for the last 70 years the descendants of his father, John Pratt, had attended the Crane Pond white school; that he, after the death of John Pratt, together with his brothers and sisters, agreed to and did change the name of John Pratt's descendants from Pratt to Platt to avoid confusion with the mails and other legal papers.

Affidavit of Mrs. M. C. Way, a white teacher, stating that she and her husband, M. C. Way, had taught in the Crane Pond school for 23 years and that Allen Platt and all of his children attended the school while she taught there.

Affidavit of Rutledge Platt, who stated that he is the son of Allen Platt and Laura Platt, that he had lived all his life until he came to Florida in the Crane Pond district of South Carolina; that he attended the Crane Pond white school; that he was a member of the national guard of South Carolina and that he was classified by said national guard as white, and in corroboration placed and filed with the court his honorable discharge from the national guard designating him as white.

Affidavit of Charles A. Platt, who stated he was the son of Allen Platt and Laura Platt; that he had lived a great part of his life in the Crane Pond district of Orangeburg County, South Carolina, attended the Crane Pond white school, was a member of the national guard of South Carolina where he was classified as white and submitted as evidence, which was filed with the court, an honorable discharge from the national guard classifying him as white, also a personnel report of his civil service connection with the army, form 50, which classified him as white.

Affidavit of Adam Platt, who stated that he is the son of John Pratt and Adeline Pratt and a full brother of Allen Platt; that he is of Indian-Irish descent; that he is married to a full blooded Cherokee Indian; that he received his schooling in the Crane Pond white school in Holly Hill, Orangeburg County, South Carolina; that after he finished school he became a highway construction foreman, that he worked in South Carolina in such position; that he also worked in several places in Florida; that he at one time

was in Tallahassee in the summer with his family and they stayed in the Capital City motor court; that in 1950 he took employment with the Manly Construction Co. in Leesburg, Lake County, Florida; that he and his wife are the parents of 8 children; that their children were entered in the Leesburg, Lake County, Florida, white schools and that they have attended those schools without any trouble of any kind for the past five years; that he has built a home in Leesburg, in the best white section of the city; that his children are members of the First Baptist Church of Leesburg; that three of his daughters have married white young men of standing and character in the city of Leesburg; that one of his daughters now has two children; that he, in performance of his duties as a foreman of road finishers for the Manly Construction Co. has lived in white hotels of the best character all over the state of Florida and that his racial status has never been questioned.

A certified copy of the marriage license of Allen Platt and Laura Dangerfield, dated 4th January, 1927, and the marriage certificate on the back dated 5th January, 1927, showing that they were white Americans.

The deposition of G. E. Brant, superintendent of Holly Hill schools, Holly Hill, Orangeburg County, South Carolina, who stated that he had been superintendent for 20 years, that the Crane Pond school was under his jurisdiction, that it was recognized by the state of South Carolina as a white school, in corroboration of which was filed and included in his deposition a certificate from Jesse T. Anderson, state superintendent of education, South Carolina, to the effect that under the laws of South Carolina only two classes of schools were recognized, white and negro; that a negro had to have one-eighth or more of negro blood; that all other classes of persons were classified as white; that the majority of the people in the Crane Pond school district were Indians, sometimes called Croatans, and that a Croatan in that section of South Carolina was recognized as part Indian and part white; that there were no Croatan negroes; that the Croatans had nothing whatever to do with negroes; that the Crane Pond school was comprised mostly of Indian-White children but was not confined entirely to that class; that frequently full white families would move into the Crane Pond district and attend that school; that there are pupils this year of full white families in that school; that it is not a special school for Croatan Indians and that there are no such schools in South Carolina. Further, that the graduates of the Crane Pond school for further work were admitted into the white schools of South

Carolina; that the present season five of the graduates of the Crane Pond elementary school were entered in the Holly Hill white school and others before this time have been so admitted; that at least one other graduate of the school was admitted into the Bamberg white high school; that he had notified D. D. Roseborough by letter on the 22nd of October, 1954, that the Platt children had been attending a white school and were classified and recognized as white children; he also identified and introduced into the record a letter which he gave to Allen Platt to bring to Florida when Allen Platt returned to South Carolina to obtain proof of his racial standing and which Allen Platt testified he showed to D. D. Roseborough and to sheriff Willis V. McCall to the effect that the Platt children were recognized as white in South Carolina and that there was no question of negroes involved in the family.

None of this evidence was questioned or disputed in any way by the defendants and conclusively shows that the Platt children always attended white schools in South Carolina, belonged to white organizations and were fully recognized as white people in that state, and are entitled to be so recognized here.

### Summary of Defendants' Evidence

Defendants filed 5 certified copies of birth certificates from isolated places in South Carolina, but failed to reveal any evidence or proof showing any relation between the parties named in this case and the names appearing on the birth certificates. The certificates themselves show on their faces that there is no relation between them and the plaintiffs.

Defendants revealed as evidence a certified copy of the will of John Pratt, the father of Allen Platt, one of the plaintiffs in this case, stating that its purpose was to identify the sons and daughters of John Pratt as brothers and sisters of the plaintiff Allen Platt. Comparing the names in this will with the birth certificates revealed by the defendants, it is impossible to discover any connection between the parties named therein and the parties named in the birth certificates filed by defendants.

Defendants' strategy all the way through this case has been one of delay and obstruction rather than desire or willingness to face the issues honestly or squarely. I am confident that their attorneys at the time they agreed to the order for pre-trial conference had been assured they could comply with all of its requirements, but found themselves on the day of the conference disappointed by the failure of the defendants and their main adviser to produce any

evidence or witnesses either to connect up the exhibits and documents which they filed or the allegations of their answer—and for that reason they could not comply with paragraph 6 of the order.

The significance of this situation is emphasized by the fact that plaintiffs come from the very strong pro-segregation state of South Carolina where they and their ancestors before them lived for many years. Yet defendants were unable to reveal the name of a single witness either from that state or Florida who could or would testify that the persons mentioned in the 5 birth certificates revealed by defendants were in any way or degree related to plaintiffs.

On the other hand, the copy of the will of John Pratt, father of Allen Platt, revealed by the defendants, gives the name of each of his 19 children, giving defendants a wide field in which to work—and yet they were unable to connect any of the birth certificates offered by them with any of the persons named in the will. The diversity of locations of the several birth certificates shows a thorough search of the state of South Carolina by defendants for birth certificates that might possibly be connected in some way with the plaintiffs in this case—yet no such relation or proposed proof of any such relation was revealed by defendants at the pre-trial conference.

Returning to defendants' second motion to dismiss, nothing that had not already been passed upon by this court except a reference to a 1955 legislative Act purporting to give school boards the authority to assign children to any school selected by the board appears therein. This Act does not purport to give the board authority to assign students by reason of color as they pretended to do in this case, although it was, as everyone knows, intended for just that purpose to circumvent the recent decisions of the Supreme Court of the United States. This Act can serve no purpose other than to further the practice of school boards in taking action and afterwards pretending to give consideration to what they have already done, as the Lake County school board did in this case. The Act is a farce, or rather a cover-up for farces, and can have no effect on the pleadings in this case. Accordingly, the motion to dismiss is denied.

When the defendants refused to reveal the names of witnesses as required by the order of pre-trial conference, plaintiffs filed a motion to strike from the answer and the amendment thereto the allegation to the effect that plaintiffs and their children are negroes within the meaning of the laws of this state. Whereupon, the court made the following pronouncement—

A hearing was had with all parties represented to arrange for a pre-trial conference. At the conclusion of the hearing, the court requested and directed counsel for both parties to get together and draft for the court an appropriate order to control the pre-trial conference. The order was agreed upon by counsel for both parties and dictated to the reporter in the presence of counsel and no objections to the contents thereof have been filed to this day, except by way of refusal of the defendants to comply with certain provisions thereof. Paragraph 6 of the order gives the defendants opportunity to make a showing as to whether they expect to show relevancy of the documents filed and by whom they expect to establish such relevancy, and connect the birth certificates and other documents they have filed with the plaintiffs in this case.

This they have refused to do, and it appears to the court that it is left with no other conclusion than that they are unable to make any such disclosure or showing.

The motion of the plaintiffs appears to be well founded and is granted.

Defendants have had ample time to prepare for and comply with the order for pre-trial conference which they helped to formulate and to which they agreed. They failed and refused to comply with the order and there is no construction that this court can place upon their action except that they had no evidence and no witnesses by which or by whom they could in any manner sustain the allegations of their answer.

A decree will be entered in favor of the plaintiffs for the relief prayed for in the complaint. Counsel for plaintiffs are requested to prepare and present to this court such decree for signature.

*Final decree:* Defendants' motion to dismiss filed August 10, 1955 is denied.

The court finds that the equities are with the plaintiffs and that the plaintiffs, Allen Platt and Laura Platt, his wife, and their children of school age whose names and ages are set forth in the complaint, are of Cherokee Indian and Caucasian descent.

It is ordered, adjudged and decreed that said children, namely, Raymond Platt, Laura Belle Platt, Esther Platt, Linda Platt and Violet Platt, are, therefore, entitled to attend any public or private school for white children in any school district in the state of Florida in which they may reside.